[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 289.]

OFFICE OF DISCIPLINARY COUNSEL *v*. JAMES.

[Cite *as Disciplinary Counsel v. James*, 1995-Ohio-318.]

*Attorneys at law—Misconduct—Indefinite suspension—Conduct involving dishonesty, fraud, deceit, or misrepresentation—Intentionally causing client prejudice or damage—Conduct prejudicial to the administration of justice—Neglect of an entrusted legal matter—Failing to notify client of having received client's funds—Failing to promptly pay or deliver funds client is entitled to receive.*

(No. 95-768—Submitted May 23, 1995—Decided August 23, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 94-39.

———————————

{¶ 1} On April 18, 1994, relator, Office of Disciplinary Counsel, charged respondent, Frank Mortimer James, last known address in Houston, Texas, Attorney Registration No. 0030368, with three counts of professional misconduct. Respondent was personally served with notice of the complaint, but did not answer. A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court heard the matter on relator's motion for default, filed pursuant to Gov.Bar. R. V(6)(F). A copy of the motion for default was sent to respondent by regular mail, but he did not reply and, by that time, had apparently moved from his Houston, Texas residence without advising the Clerk of the Supreme Court, Attorney Registration Office, as required by Gov. Bar R. VI(1)(D).

{¶ 2} With respect to Count I of the complaint, the panel, in sustaining the motion for default, found that respondent had violated DR 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation) and 7-101(A)(3)

(intentionally causing client prejudice or damage) while representing Motasem Fahmi Al-Zoubi in immigration proceedings.

{¶ 3} Evidence established that Al-Zoubi retained respondent in February 1992, initially to help him gain asylum in the United States, and later, after he married, to request an adjustment of his status. Al-Zoubi paid respondent at least $600 for his services. During the last months of 1992 and continuing through March 1993, Al-Zoubi and his wife attempted many times to contact respondent to learn about the status of the application. They had little success, but, on at least one occasion, respondent represented that he had properly sent the necessary papers on Al-Zoubi's behalf.

{¶ 4} Respondent apparently did send one document necessary for Al-Zoubi's change of status, an "I-130 petition," on January 12, 1993 to the appropriate agency. That agency apparently approved the I-130 petition, but its approval was based on respondent's erroneous representation that Al-Zoubi was not involved in deportation proceedings. Respondent was out of the country on personal business when his office received notice of the approval of the I-130 petition. The notice of approval and another required document, the "I-485" form, were due for filing on February 12, 1993 by order of the immigration judge before whom Al-Zoubi's "[A]pplication for Relief from Deportation" was pending. Neither document was filed in accordance with the deadline, and when the immigration judge did not receive the necessary papers, the judge considered Al-Zoubi to have abandoned his claim. The judge dismissed Al-Zoubi's case on February 24, 1993, at which time he apparently also granted Al-Zoubi until March 28, 1993 to leave the country voluntarily.

{¶ 5} Respondent chose not to appeal the dismissal, and instead moved to reopen the proceedings before the immigration judge. His motion was denied on March 17, 1993. Respondent did not advise Al-Zoubi of this development until March 29, 1993, when Al-Zoubi's wife telephoned to inquire about an April 1, 1993

hearing in the case. Respondent advised the Al-Zoubis not to attend the hearing, explaining that the immigration judge had "refused" their case. Al-Zoubi discharged respondent, asked for the return of his file, and went to the April 1, 1993 hearing anyway on the advice of the Immigration and Naturalization Service. He learned on that day of the consequences of respondent's failure to comply with the February 12, 1993 deadline. The Al-Zoubis subsequently sought other counsel to help them avoid the deportation order.

{¶ 6} With respect to Count II, the panel, in sustaining the motion for default, determined that respondent had violated DR 1-102(A)(4), 1-102(A)(5) (conduct prejudicial to the administration of justice), and 6-101(A)(3) (neglect of entrusted legal matter) while representing James B. Toney in a combined breach of contract and employment discrimination action.

{¶ 7} Evidence established that Toney had retained respondent in January 1991 on a contingency-fee basis and with a $1,000 deposit to be applied for expenses. During the spring and summer of 1991, respondent failed to pursue the possibility of settlement in the case and failed to respond to Toney's requests for status reports. At some point that summer, respondent represented to Toney that he would soon be prepared to institute an action on Toney's behalf; however, he did not actually file a complaint until January 2, 1992, which, according to Toney, was just one or two days before the applicable statute of limitations was to expire. According to Toney, respondent also implied that he would amend the complaint because it was so poorly drafted, but he never did.

{¶ 8} Respondent failed to keep scheduled appointments with Toney. He also failed to attend a scheduling conference conducted on April 29, 1992 in the federal district court where he had filed Toney's action. The court issued a show cause order requiring Toney's appearance on May 27, 1992. Respondent appeared at the hearing, but did not advise his client of this development. According to Toney, respondent learned at the show cause hearing that the complaint had not

been served on the defendant, Toney's former employer, and that the court had ordered respondent to complete such service by June 29, 1992. Respondent did not mail a summons until June 30, 1992, and the employer was not served until July 1, 1992.

{¶ 9} In July and August 1992, Toney's former employer filed motions requesting dismissal, sanctions, expedited submission, and postponement of discovery disclosures, all without any opposition from respondent. At a meeting in August 1992, respondent represented to Toney that he had prepared some documents on his behalf, but respondent allegedly refused to show Toney the documents or provide copies.

{¶ 10} On August 14, 1992, the federal district court notified the parties that it would treat the employer's motion to dismiss as a motion for summary judgment and ordered the filing of appropriate responses within ten days. Respondent did not advise his client of this order or respond to it. On September 1, 1992, the court granted the motion for summary judgment.

{¶ 11} Respondent did not advise Toney of the summary judgment order entered against him and continued to schedule meetings with his client, several of which respondent missed, during September 1992. On October 13, 1992, Toney discharged respondent and requested his file. Toney received the file on October 22, 1992. However, it was not until October 26, 1992 that Toney finally learned of the dismissal of his action.

{¶ 12} With respect to Count III, the panel, in sustaining the motion for default, found that respondent had violated DR 1-102(A)(4), 1-102(A)(5), 9-102(B)(1) (failing to notify client of having received client's funds), and 9-102(B)(4) (failing to promptly pay or deliver funds client is entitled to receive) while representing Richard Shakin Noble in immigration proceedings.

{¶ 13} Evidence established that respondent represented Noble in efforts to seek adjustment of his status and avoid deportation, or, alternatively, to gain

permission to depart from the United States voluntarily. At a hearing before an immigration judge on May 7, 1992, respondent promised to file the required Form I-485, along with proof of having filed required Form I-130, by the close of business on June 8, 1992. The immigration judge specified that respondent's failure to comply would result in an order of deportation for his client. Respondent missed the deadline and requested a two-week extension on June 9, 1992. On June 15, 1992, the immigration judge issued an order of deportation that contained the following statement about respondent: "[D]ilatory and untimely procedures are typical of the way counsel practices before this court, and the court refuses to indulge counsel's tardiness and negligence any further."

{¶ 14} Respondent apparently threatened to withdraw as Noble's counsel on or around June 26, 1992 because Noble had paid some, but not all, of respondent's fees. However, on or around June 29, 1992, respondent filed an appeal of the deportation order on which he allegedly signed Noble's name. Noble asserts that he did not authorize the appeal or the signature. In December 1992 and February 1993, respondent accepted at least $350 to file an application to stay the deportation order, which he apparently filed in February 1993 without a required certification. Moreover, respondent has apparently failed to forward to the proper authority the receipt necessary for cancellation and refund of the $2,500 immigration bond Noble posted through counsel.

{¶ 15} The panel, in finding that respondent had violated the Disciplinary Rules designated in the complaint, recommended that respondent receive an indefinite suspension from the practice of law for his misconduct. The board agreed and adopted the panel's findings and recommendation.

_____

*Geoffrey Stern*, Disciplinary Counsel, *Stacy M. Solochek* and *Dianna L. Chesley*, Assistant Disciplinary Counsel, for relator.

_____

**Per Curiam**

{¶ 16} Upon review of the record, we concur in the board's findings of misconduct and its recommendation.  Accordingly, respondent is hereby suspended indefinitely from the practice of law in Ohio.  Costs taxed to respondent.

*Judgment accordingly*.

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____